JB 11/19/20

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

☆   NOV 19 2020   ☆

LONG ISLAND OFFICE

Robert Perry
2579 overlook Place
Baldwin, NY 11510

(Write the full name of each plaintiff who is filing
this complaint. If the names of all the plaintiffs
cannot fit in the space above, please write "see
attached" in the space and attach an additional
page with the full list of names.)

-against-

Half Hollow Hills Central School District
ATTN: ASSISTANT Superintendent of School
525 Half Hollow Road
Dix Hills, N.Y. 11746

(Write the full name of each defendant who is
being sued. If the names of all the defendants
cannot fit in the space above, please write "see
attached" in the space and attach an additional
page with the full list of names.)

Amended
Complaint for Employment
Discrimination

Case No. CV 20 5656

(to be filled in by the Clerk's Office)

Jury Trial:   ☐ Yes   ☐ No
(check one)

AZRACK, J.

LOCKE, M. J.

F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

☆   MAR 11 2021   ☆

LONG ISLAND OFFICE

Defendant 1. Half Hollow Hills Central School District

Defendant 2  Dr. Jeffrey Woodberry

Defendant 3  Mr. Wayne Ebanks

Defendant 4  Jennifer Palumbo

## I.   The Parties to This Complaint

### A.   The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | Robert Perry |
| Street Address | 2579 Overlook Place |
| City and County | Baldwin, Nassau County |
| State and Zip Code | New York, 11510 |
| Telephone Number | 516 - 456 - 7718 |
| E-mail Address | Robgp13.e.gmail.com |

### B.   The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title (if known).  Attach additional pages if needed.

Defendant No. 1   Half Hollow Hills Central School District, 525 Half Hollow Rd, Dix Hills 11746

Defendant 2

| | |
|---|---|
| Name | Dr. Jeffrey Woodberry |
| Job or Title (if known) | Assistant Superintendent |
| Street Address | 525 Half Hollow Road |
| City and County | Dix Hills, Suffolk County 11746 |
| State and Zip Code | N.Y., 11746 |
| Telephone Number | 631-592-3000 |
| E-mail Address (if known) | |

Defendant No. 3   Half Hollow Hills Central School District

| | |
|---|---|
| Name | Mr. Wayne Ebanks |
| Job or Title (if known) | Assistant Principal |
| Street Address | 525 Half Hollow Road |
| City and County | Dix Hills, Suffolk County 11746 |

Defendant 4   Jennifer Palumbo
525 Half Hollow Rd
Dix Hills, NY Suffolk County, NY 11746

State and Zip Code _New York, 11746_
Telephone Number _631-592-3000_
E-mail Address
(if known) _____

## C.     Place of Employment

The address at which I sought employment or was employed by the defendant(s)
is:

Name _Half Hollow Hills Central School District_
Street Address _375 Wolf Hill Road_
City and County _Dix Hills, Suffolk County_
State and Zip Code _New York, 11746_
Telephone Number _____

## II.   Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that
apply)*:

☑     Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e
      to 2000e-17 (race, color, gender, religion, national origin).

      *(Note:  In order to bring suit in federal district court under Title VII, you
      must first obtain a Notice of Right to Sue letter from the Equal
      Employment Opportunity Commission.)*

☑     Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C.
      §§ 621 to 634.

      *(Note:  In order to bring suit in federal district court under the Age
      Discrimination in Employment Act, you must first file a charge with the
      Equal Employment Opportunity Commission.)*

☑     Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112
      to 12117.

      *(Note:  In order to bring suit in federal district court under the Americans
      with Disabilities Act, you must first obtain a Notice of Right to Sue letter
      from the Equal Employment Opportunity Commission.)*

☐   Other federal law *(specify the federal law)*:

_____

☐   Relevant state law *(specify, if known)*:

_____

☐   Relevant city or county law *(specify, if known)*:

_____

## III.   Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.   The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

☐   Failure to hire me.

☐   Termination of my employment.

☐   Failure to promote me.

☐   Failure to accommodate my disability.

☑   Unequal terms and conditions of my employment.

☑   Retaliation.

☑   Other acts *(specify)*:   Discriminate

*(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B.   It is my best recollection that the alleged discriminatory acts occurred on date(s)

Throughout the school year 2017 - 2018

C.   I believe that defendant(s) *(check one)*:

   ☐   is/are still committing these acts against me.
   ☑   is/are not still committing these acts against me. *N/A*

D.   Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

   ☑   race _____
   ☑   color _____
   ☑   gender/sex _____
   ☐   religion _____
   ☐   national origin _____
   ☐   age.  My year of birth is _____. *(Give your year of birth only if you are asserting a claim of age discrimination.)*
   ☑   disability or perceived disability *(specify disability)*
        Heart , vertigo _____

E.   The facts of my case are as follows.  Attach additional pages if needed.

   Please see four plus pages Attached.

   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____

   *(Note:  As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

IV.   **Exhaustion of Federal Administrative Remedies**

A.   It is my best recollection that I filed a charge with the Equal Employment
Opportunity Commission or my Equal Employment Opportunity counselor
regarding the defendant's alleged discriminatory conduct on *(date)*

B.   The Equal Employment Opportunity Commission *(check one):*

☐   has not issued a Notice of Right to Sue letter.

☑   issued a Notice of Right to Sue letter, which I received on *(date)* 9/17/2020

*(Note: Attach a copy of the Notice of Right to Sue letter from the
Equal Employment Opportunity Commission to this complaint.)*

C.   Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment
Opportunity Commission regarding the defendant's alleged discriminatory
conduct *(check one)*:

☐   60 days or more have elapsed.

☐   less than 60 days have elapsed.

V.   **Relief**

State briefly and precisely what damages or other relief the plaintiff asks the court to
order. Do not make legal arguments. Include any basis for claiming that the wrongs
alleged are continuing at the present time. Include the amounts of any actual damages
claimed for the acts alleged and the basis for these amounts. Include any punitive or
exemplary damages claimed, the amounts, and the reasons you claim you are entitled to
actual or punitive money damages.

Because of the pain and torture that the school district
district put me through on a daily basis. Each day
felt like I was in purgatory. They slandered my character
beyond repair. Therefore I am requesting the damages in
the amount of ONE million Dollars $1,000,000
I continue to have nightmares because of the abuse they put me through.

**VI.**     **Certification and Closing**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

**A.**     **For Parties Without an Attorney**

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: __11/17/__, 20 20

Signature of Plaintiff     _Robert Perry_

Printed Name of Plaintiff     _Robert Perry_

11/11/2020

My Justified Complaint
EEOC Charge No
16G-2020-01066

In mid April of 2017, I was fulfilling my role as a paraprofessional in a special education classroom. The room was transformed from a general setting to that of a home economics style classroom. There were approximately 15 paraprofessionals with 15 students and one teacher. These students were in the middle of a project while a group of the paraprofessionals chatted amongst themselves. Jennifer Palumbo (a Paraprofessional) was explaining to the other paraprofessionals her experience with a personal trainer. She went into detail about what her trainer was instructing her to do in a loud tone, coming off as if she wanted others to pay attention to her story. At the time, I was not paying attention to that conversation, as I was focusing on my student. Eventually, she called my name and asked if I worked out. I nodded and simply said, "I was a trainer." She responded to my answer in a seductive tone, asking "How would you like to work this out?" Her question was followed by a hand gesture, which began at the top of her body and moved downward. I closed my eyes in frustration and shock and then turned away to continue with my student.

The following day after this uncomfortable incident, I heard my name over the loud speaker, directing me to go to the main office. Principal, Dr. Michael Catapano, and Mr. Wayne Ebanks, wanted to confront me regarding a false claim coming from an anonymous paraprofessional that I made an "uncomfortable" comment. I was told that I would not formally be written up and, due to confidentiality, the identity of this paraprofessional would remain unnamed. I expressed my dissatisfaction being falsely accused of making any kind of uncomfortable statement. I asked both superiors if there were any other concerns that I should be aware of. They replied by saying that there were not and that I was excused. Before excusing myself, I voiced my concern about returning to the classroom setting because of this incident.

After pondering on this for several weeks, I believed that I knew who the accuser was. In the end, my intuition was correct. I tried my best to avoid Jennifer Palumbo and focus on my student.

On Tuesday, February 6, 2018 at 12:45 p.m., I met up with Paraprofessional Union Representative Lori Levine for a scheduled meeting at 1:00 p.m. with Assistant Superintendent Dr. Jeffrey Woodberry, Assistant Principal Mr. Wayne Ebanks, and Director of Special Education Michelle Melfie. Lori and I waited in a waiting area for 1.5 hours and were not called in until 2:30 p.m., which seemed to be intentional in order to create an anxious mindset for the both of us, especially focused on me.

When entering, both Dr. Woodberry and Mr. Ebanks were silent. Neither made eye contact and both had negative facial expressions, creating an unnecessarily, tense atmosphere. As Mr. Ebanks sat with his arms crossed, Dr. Woodbury was gathering documents in an uptight manner. When Mrs. Lori Levine and I found our seats, there was no courteous or friendly talk between any of the parties in the room, immediately creating a tense environment. I was quite appalled about their intimidating behavior, as the reason for the meeting was because of the letter that I had written to Dr. Woodberry regarding the school bus incident. My request was to

express that I was being treated unfairly in the workplace and being retaliated against due to the letter I wrote to Dr. Woodberry regarding the hostile work environment, especially the incident that occurred on the after school bus when Jennifer apologized for the false accusation.

Dr. Woodberry was very defensive and increased his arrogant behavior when I expressed very clearly the details what took place on the school bus when the last student had been dropped off. Paraprofessional Jennifer Palumbo walked from the back of the bus to the front of the bus where I was sitting on the first seat passenger side and Jennifer sat first seat drivers side right behind the bus driver, Eileen. Jennifer apologized for falsely accusing me of what I did not say to her (check bus video). Jennifer confessed, "I'm sorry for what I did. I know you are a good guy, I am so sorry for what I did". She confessed also that the other paraprofessionals, Filomena Crabtree, Linda Renert, Anna Murania, and others forced her to make the false accusation. My response was, "Did they have a gun to your head?," as I was trying to imply that she was not entirely forced to do it and did not feel that she had enough power to retaliate. With hesitation, she responded with "no," which resulted in me walking away from the conversation with nothing but frustration, yet relief.

I stated to Dr. Woodberry that I would like to clarify my character, which I felt had clearly been tainted.

Instead of Dr. Woodberry responding in a rational, authoritative and compassionate fashion about my factual description of the events that took place, he became very defensive and heated as he clearly defended Jennifer.

During the meeting, Dr. Woodberry and Mr. Ebanks body's and facial languages increasingly became more intimidating. The tone alone in their voices were extremely demeaning, condescending, and threatening. They were creating a very uncomfortable environment that made me feel like I was doing something wrong and that's furthest from the truth. This meeting was supposed to be about seeking help that I was requesting, but instead, it felt as if my factual statements actually infuriated them. Dr. Woodberry hurried the meeting at this point and cut it short.

As Lori and I proceeded to exit the conference room, Lori Levine stated, in a whisper, that Dr. Woodberry was not happy and that she was very nervous about his conduct.

Irene Davison and Phyllis O'Shea were both made aware of the incident on the bus that evening when I called them to explain. The next morning, when I saw Irene and Phyllis, they both told me, "You're a man, get over it" (check video from main lobby).

Dr. Woodberry then said there would be an investigation, beginning in February. Well February passed, March, April, May and then June, the last month before summer break.

I was assigned to the copy room, where I was directed by Mr. Ebanks to shadow, follow and ask questions to Shaymaa Abdelkader. I did mention to Mr. Ebanks and his secretary, Sandy, that I was not familiar on how to work the copy machines. Mr. Ebanks responded in a cold manner by saying to just "get used to it." I entered the copyroom/teacher room and approached Shaymaa and introduced myself. She ignored me and displayed no interest in becoming co-workers. She

was constantly on her cell phone,(EXHIB PICS) speaking in what I believed to be Arabic. I repeatedly asked her questions about the copy machines, but she refused to assist me.

After approximately one week, I had no choice other than to return to Mr. Ebanks' office to explain the issues. His response was, "It is her domain". I asked how I was expected to work under these conditions with no help at all. Mr. Ebanks said that "she is having difficulty, it's her culture." I was not comprehending how the fact that she was Muslim would affect her work ethics. We were working for the same cause, making copies, trouble shooting and fixing the machines, which has no relation to anyone's culture.

A meeting was set up soon after in Mr. Ebanks' office. Those present were Union Rep Phyllis O'Shea, Shaymaa, myself and Mr. Ebanks. She had Mr. Ebanks speak on her behalf, who expressed that she did not like me, but would not give a reason. I was willing to work with her, but Shaymaa refused to cooperate. Shortly after this incident, I was removed from my copy room assignment and assigned to sit in the cafeteria against the wall as a "Floater".

Phyllis O'Shea reminded me many times that she thought Ebanks was a "racial bastard" and made sure he took care of his "own color." She had limited time before she could retire therefore she kept quiet and made no waves.

That is when I filed papers to the Human Rights Division. (end of May- begin of June, 2018)

I was also assigned to the student to only escort him to his class. I was not allowed in the classroom and therefore had to wait outside in the hall during this time (sometimes I had a chair, most times not). I peeked into the window of the classroom to check on him and was ready to escort him to his next class. (SEE EXHIBIT PAGE 4)

The new school year begins in Sept 2018. It had been eight months and still I had not heard any word about the results or any type of investigation. Therefore, I assumed that there was no investigation taking place. Regardless of the allegations, I stayed professional with others and remained on point. I received no feedback whatsoever, but Mr. Ebanks kept moving and changing my assignments, trying to create a trail to falsely show that I was incapable of performing any job. Both Dr. Woodberry and Mr. Ebanks tried their best to make my time at Half Hollow Hills Central School District a miserable and hostile one, through the acts of bullying, harassment, racial discrimination, slander, and intimidation.

The racial discrimination was apparent when Mr. Ebanks would choose African American employees for extra employment opportunities over caucasian employees. I approached Mr. Ebanks regarding an open after-school bus opportunity, but was turned down many times while the positions were given to those of color. Additionally, he accused me of coming in late on multiple occasions, but waived this act for any African American employees, such as Paraprofessionals Mike, Chris, Dave, Briana and others of color. (check video). Keep in mind I did get along with these other peers.

At one time Mr. Ebanks and Dr. Catapano called me down to the office accusing me of coming in late. My first and only question was, "did you check the video "because I was on time?". I never heard about that topic again.

Many times, other paras who were African American used phones and were not penalized. There were many times I was not using my phone, but was falsely accused and penalized (check video). There were times when Chris and Mike, as well as other paraprofessionals Dave

Simon, Briana Davis would use their phones in the classroom or elsewhere with their students. Mr. Ebanks would witness this misconduct and ignore it.

There were many false allegations to create a dirty trail against me, i.e. on September 28th 2018 I believe I was in Mr. Ebank's office discussing the double assignment I was assigned, I explained I was not comfortable with the 2nd student because of the high risk factor due to a near death car crash he was in the prior year (both union reps agreed). Due to the meeting with Mr. Ebanks I was tardy for the class for the 1st student.

The other allegations were simply false. Regards to(EXHIBIT Allegation #5) that is just off the charts wrong. By slandering my character, they created a false and fictitious story which held no truth. (See attached document, false claims)

There is no doubt in my mind that Dr. Woodberry and Mr. Ebanks will deny all of these hostile events that occurred. They failed to tell the truth and even made false accusations about events that never took place. Dr. Woodberry and Mr. Ebanks need to be held accountable for all of their false and negative actions and statements and have to stop retaliations, intimidations, and discrimination based on their race and titles. When an employee files legitimate complaints about hostile and offensive workplace regarding verbal and non verbal actions, the investigation needs to be done appropriately and people involved need to be held accountable for their actions. Double standards are present in this district, which should not be present at all.

Many employees were afraid to come forward because they did not want to be forced out, as I was, and lose their jobs. My goal was to address the issues, fix them, and still maintain employment in this district.

I believe the date was October 12th, 2018, Principal Dr. Michael Catapano stopped me and in a whisper said to me, "via message from Dr. Woodberry, "You're being sent home". (Confused) "I asked why?" He said, "That's all he knew". I said, "I'm being sent home and we don't know the reason?" "No". "For how long?" "Not sure." I stood there for a few seconds, turned and walked out through the front door lobby feeling defeated. How would you feel?

This all originated because I wrote a letter reaching out for help regarding the hostile and offensive work environment. No words can express how I felt by their retaliations, their intimidating tactics, their manipulated behavior, or their verbal derogatory fashion by using their titles and their race to benefit their mission.


Sincerely,

*Robert Perry*

Robert Perry

4.

EXHIBIT page 4

Staff Member #2, going to her classroom and peering through the window of the classroom door multiple times, causing her considerable concern.

Staff Member #3 (female)     Mr. Perry inappropriately stared at Staff Member #3 while the two were assigned to work together. He stood close behind Staff member #3 for an extended period, and brought himself uncomfortably close to her face. Mr. Perry treated her in a hostile manner, including yelling at her, and slamming a ream of paper down on a table where Staff Member #3 was working. Staff Member #3 is afraid of Mr. Perry.

Staff Member #4 (female)     Mr. Perry inappropriately stared at her, eyeing the front of her body and her backside for an uncomfortable period of time. Mr. Perry made inappropriate comments to her about her body and appearance, and frequently followed her around the school building. On one occasion, Mr. Perry waited until Staff Member #4 was alone and followed her into a room in an isolated part of the school. Mr. Perry asked her inappropriate personal questions, which Staff Member #4 believes had romantic overtones. On one occasion, Mr. Perry waited and watched for her to leave the school premises, and followed her in his vehicle.

Staff Member  #5 (female)     Mr. Perry was hostile and insubordinate to a Staff Member #, a teacher, in her classroom, refused to perform his job duties and refused to obey her directions. When Staff Member #5 complained about Mr. Perry to school officials, he made inappropriate comments to her. Shortly thereafter, Staff Member #5 received a package of penis-shaped candies at her home address from an anonymous source. The staff member believes that Mr. Perry was the sender.

Staff Member  #6 (female)     Mr. Perry inappropriately paced in front of the classroom of Staff Member #6, a teacher, frequently stalked her movements in the building, asked her inappropriate personal questions, making her feel uncomfortable.

Staff Member  #7     Mr. Perry was defiant and insubordinate to Staff Member #7, a teacher, refusing to put away his personal paperwork during class when directed to do so, and to instead pay attention to his assigned student. Mr. Perry used a disrespectful and intimidating tone with this teacher, who specifically requested that Mr. Perry no longer be present in her classroom.

* * *

In light of the above serious allegations of misconduct, whereby a number of professional and paraprofessional staff members have reported experiencing harassment and/or intimidation by complainant, as well as a number of reported instances where Mr. Perry simply failed to perform his duties, the District has an obligation to investigate these allegations and take appropriate action with respect to Mr. Perry, notwithstanding the pendency of the instant discrimination complaint.

In summary, it is complainant's own conduct which has resulted in complainant's reassignment and the possible preferral of disciplinary charges against him. There is absolutely no basis for a finding of a retaliatory motive by the District. For the Commission to determine

multiple times, causing her considerable concern.

Staff Member #3 (female)    Mr. Perry inappropriately stared at Staff Member #3 while the two were assigned to work together. He stood close behind Staff member #3 for an extended period, and brought himself uncomfortably close to her face. Mr. Perry treated her in a hostile manner, including yelling at her, and slamming a ream of paper down on a table where Staff Member #3 was working. Staff Member #3 is afraid of Mr. Perry.

Staff Member #4 (female)    Mr. Perry inappropriately stared at her, eyeing the front of her body and her backside for an uncomfortable period of time. Mr. Perry made inappropriate comments to her about her body and appearance, and frequently followed her around the school building. On one occasion, Mr. Perry waited until Staff Member #4 was alone and followed her into a room in an isolated part of the school. Mr. Perry asked her inappropriate personal questions, which Staff Member #4 believes had romantic overtones. On one occasion, Mr. Perry waited and watched for her to leave the school premises, and followed her in his vehicle.

Staff Member #5 (female)    Mr. Perry was hostile and insubordinate to a Staff Member #, a teacher, in her classroom, refused to perform his job duties and refused to obey her directions. When Staff Member #5 complained about Mr. Perry to school officials, he made inappropriate comments to her. Shortly thereafter, Staff Member #5 received a package of penis-shaped candies at her home address from an anonymous source. The staff member believes that Mr. Perry was the sender.

Staff Member #6 (female)    Mr. Perry inappropriately paced in front of the classroom of Staff Member #6, a teacher, frequently stalked her movements in the building, asked her inappropriate personal questions, making her feel uncomfortable.

Staff Member #7    Mr. Perry was defiant and insubordinate to Staff Member #7, a teacher, refusing to put away his personal paperwork during class when directed to do so, and to instead pay attention to his assigned student. Mr. Perry used a disrespectful and intimidating tone with this teacher, who specifically requested that Mr. Perry no longer be present in her classroom.

* * *

In light of the above serious allegations of misconduct, whereby a number of professional and paraprofessional staff members have reported experiencing harassment and/or intimidation by complainant, as well as a number of reported instances where Mr. Perry simply failed to perform his duties, the District has an obligation to investigate these allegations and take appropriate action with respect to Mr. Perry, notwithstanding the pendency of the instant discrimination complaint.

In summary, it is complainant's own conduct which has resulted in complainant's reassignment and the possible preferral of disciplinary charges against him. There is absolutely basis for a finding of a retaliatory motive by the District. For the Commission to determine

- 4 -

Exhibit 3          Exhibit 4          Exhibit 5          Exhibit 6

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: Robert G Perry<br>2579 Overlook Place<br>Baldwin, NY 11510 | From: New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|

| [ ] | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 16G-2020-01066 | Holly M. Shabazz,<br>State & Local Program Manager | (929) 506-5316 |

## THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[X] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*Judy A. Keenan*

**Judy A. Keenan,**
**District Director**

September 17 2020

(Date Mailed)

Enclosures(s)

cc:
**HALF HOLLOW HILLS**
**CENTRAL SCHOOL DISTRICT**
**Attn: Superintendent of School**
**525 Half Hollow Road**
**Dix Hills, NY 11746**

.ure with EEOC
.m 181 (11/16)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS**  --  **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**. Therefore, you should **keep a record of this date.** Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was mailed to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS**  --  **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit **before 7/1/10** -- *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION**  --  **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE**  --  **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice.** (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

AL EMPLOYMENT O... ...OMMISSION
New York District
33 Whitehall Street, 5th Fl
New York, N.Y. 10004

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE, $300

1151083794 C004

- [ ] Your charge was not timely filed with EEOC... discrimination to file your charge

- [ ] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

- [x] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

- [ ] Other (briefly state)

## - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Judy A. Keenan,
District Director

September 17 2020
(Date Mailed)

Enclosures(s)

cc:   HALF HOLLOW HILLS
CENTRAL SCHOOL DISTRICT
Attn: Superintendent of School
525 Half Hollow Road
Dix Hills, NY 11746

AL EMPLOYMENT C.....
New York District
33 Whitehall Street, 5th Fl
New York, N.Y. 10004

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE, $300

...MMISSION

1151083734 0004

Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

FROM:

ROBERT PERRY
2579 OVERlook Place
Baldwin, NY 11510



CERTIFIED MAIL

7020 1810 0000 5780 0041

U.S. POSTAGE PAID
$8.40

TO:

Clerk of U.S. District Court, EDNY
100 Federal Plaza
Central Islip, New York 11722

Photo Document Mailer
9 3/4" x 12 1/4"

ReadyPost

Robert Perry
79 Overlook Place
Baldwin, NY 11510

ATT: Clerk Of UnitedStates District Court EDNY
100 Federal Plaza
Central Islip, NY 11722

Jessica

3/11

UNITED STATES
POSTAL SERVICES

1000

11722

MAR 09 '21
AMOUNT
$7.05
R2304M113128-04

CERTIFIED MAIL

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

7020 1810 0000 5781 7230