UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
ROBERT PERRY,                                                          Case No. 20-CV-5656
                                                                      (JMA)(JMW)
                                    Plaintiffs,

                 - against -

HALF HOLLOW HILLS CENTRAL SCHOOL DISTRICT,
DR. JEFFREY WOODBERRY, MR. WAYNE EBANKS
And JEFFREY PALUMBO,

                                    Defendants.
-------------------------------------------------------------------------X


## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS


                                    VOLZ AND VIGLIOTTA, PLLC
                                    *Attorneys for Defendants*
                                    280 Smithtown Blvd.
                                    Nesconset, New York 11767
                                    (631) 366-2700


Of Counsel
Joshua S. Shteierman

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................i

PRELIMINARY STATEMENT ...........................................................................1

FACTS AND PROCEDURAL BACKGROUND ..................................................1

ARGUMENT

    **POINT I**
    **STANDARD OF REVIEW** .........................................................................7

    **POINT II**
    **THE PLAINTIFF HAS RELEASED THE DISTRICT FROM**
    **THE CLAIMS ASSERTED IN THE AMENDED**
    **COMPLAINT** ...............................................................................................9

    **POINT III**
    **PLAINTIFF'S RACE AND GENDER DISCRIMINATION**
    **CLAIMS ARE TIME-BARRED** ...............................................................11

    **POINT IV**
    **EVEN IF CONSIDERED, THE PLAINTIFF'S TITLE VII**
    **CLAIMS MUST BE DISMISSED** .............................................................13

    **POINT V**
    **THE COMPLAINT DOES NOT STATE AN AGE**
    **DISCRIMINATION CLAIM** ....................................................................14

    **POINT VI**
    **THE COMPLAINT DOES NOT STATE AN ADA**
    **VIOLATION** ...............................................................................................15

    **POINT VII**
    **PLAINTIFF'S TITLE VII RETALIATION CLAIM MUST**
    **BE DISMISSED** .........................................................................................16

CONCLUSION ...................................................................................................18

## TABLE OF AUTHORITIES

**Cases**

Allen v. Riese Org., Inc.,
   106 A.D.3d 514 (1ˢᵗ Dept. 2013)..................................................................10

Ashcroft v. Iqbal,
   556 US 662 (2009) ..................................................................................8

Bell v. Jendell,
   980 F.Supp.2d 555 (S.D.N.Y. 2013) ..................................................8

Bell Atlantic v. Twombley,
   550 US 544 (2007) ..................................................................................7, 8

Bowen-Hooks v. City of New York,
   13 F.Supp.3d 179 (E.D.N.Y. 2014)..................................................12, 16

Brass v. American Film Technologies, Inc.,
   987 F.2d 142 (2d Cir. 1993) ..................................................................9

Cameron v. Cmty. Aid for Retarded Children, Inc.,
   335 F.3d 60 (2d Cir. 2003) ..................................................................16

Castro v. Simon,
   2019 WL 136692 (E.D.N.Y. Jan. 7, 2019) ..................................................8

Centro Empresarial S.A. v. America Movil, S.A.B. deC.V.,
   17 N.Y.3d 269 (2011) ..................................................................................9

Chambers v. Time Warner,
   282 F.3d 147 (2d Cir. 2002) ..................................................................9

Cifra v. Gen. Elec. Co.,
   252 F.3d 205 (2d Cir. 2001) ..................................................................17

Dimitracopoulos v. City of New York,
   26 F.Supp.3d 200 (E.DN.Y. 2014)..................................................15

Ferrari v. County of Suffolk,
   790 F.Supp.2d 34 (E.D.N.Y. 2011) ..................................................9

Gorzynski v. Jet Blue Airways Corp.,
   596 F.3d 93 (2d Cir. 2010) ..................................................................15

Holowecki v. Fed. Exp. Corp.,
    440 F.3d 558 (2d Cir. 2006) ........................................................................12

Jacques v. DiMarzio, Inc.,
    386 F.3d 192 (2d Cir. 2003) ........................................................................16

Johnson v. A1 Tech Specialties Steel Corp.,
    731 F.2d 143 (2d Cir. 1984) ........................................................................12

Johnson v. Lebanese Am. Univ.,
    84 A.D.3d 427 (1st Dept. 2011) ..................................................................10

Leibowitz v. Cornell University,
    584 F.3d 487 (2d Cir. 2009) ........................................................................14

Mario v. P&C Food Markets,
    313 F.3d 758 (2d Cir. 2002) ........................................................................15

McDonnell Douglas Corp. v. Green,
    411 U.S. 792 (1973) ...............................................................................13, 14

McEachin v. McGuinnis,
    357 F.3d 197 (2d Cir. 2004) ..........................................................................8

McElwee v. Cty. of Orange,
    700 F.3d 635 (2d Cir. 2012) ........................................................................16

Podlach v. Village of Southampton,
    20717 WL 4350433 (E.D.N.Y. 2017) ............................................................8

Terry v. Ashcroft,
    336 F.3d 128 (2d Cir. 2003) ........................................................................14

Univ. of Tex. Sw. Med. Ctr. v. Nassar,
    133 S.Ct. 2517 (2013) ..................................................................................17

Vega v. Hempstead Union Free Sch. Dist.,
    801 F.3d 72 (2d Cir. 2015) ..........................................................................17

Weinstein v. Albright,
    261 F.3d 127 (2d Cir. 2001) ..........................................................................8

Wingate v. Deas,
    2012 WL 1134893 (E.D.N.Y. 2012) ..............................................................8

**Statutes**

29 U.S.C. §626 ................................................................................................14

42 U.S.C. §2000e-3(a) ...................................................................................17

42 U.S.C. §2000e-5(f)(1) ...............................................................................11

Age Discrimination in Employment Act ...........................................1, 6, 7, 10, 14

Americans with Disabilities Act.......................................................1, 6, 7, 10

Executive Law §296 .....................................................................................6, 10

Federal Rule of Civil Procedure 8(a)(2) ........................................................7

Federal Rule of Civil Procedure 12(b)(6) .......................................................9

Federal Rule of Civil Procedure 15(a)............................................................7

Title VII of the Civil Rights Act of 1964................................................1, 6, 7, 10

## PRELIMINARY STATEMENT

Robert Perry (hereinafter "plaintiff") brings the instant action alleging that during the 2017/2018 school year he was discriminated against and subjected to retaliation due to his race, age and disability status in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA") and the Americans with Disabilities Act ("ADA"). (See Amended Complaint, dated November 17, 2020, annexed to Shteierman Declaration as Exhibit "A").

It is respectfully submitted that the Amended Complaint be dismissed in its entirety. As detailed below, the plaintiff previously released the defendants from all claims arising from his employment with the Half Hollow Hills Central School District (hereinafter "District"), including the very employment discrimination and retaliation claims he asserts in the instant action. Additionally, the plaintiff's claims are time barred as the instant action was not timely commenced following the plaintiff's receipt of a "Right to Sue Letter" from the EEOC on or about June 25, 2019. Lastly, even if substantively considered, the Amended Complaint fails to set forth claims under Title VII, the ADEA or the ADA.

As such, it is respectfully submitted that the Amended Complaint be dismissed in its entirety and with prejudice.

## FACTS AND PROCEDURAL HISTORY[1]

Plaintiff was a paraprofessional employed by the Half Hollow Hills Central School District (hereinafter "District"). (Exhibit "A"). In April, 2017, the plaintiff was allegedly in a room with fellow paraprofessional Jennifer Palumbo who was explaining her experiences with a personal

---

[1] The facts are taken from the plaintiff's Amended Complaint and are assumed to be true for purposes of this motion only. The moving defendants do not admit or concede the truth of the facts alleged in the Amended Complaint and reserve the right to challenge them at a later date.

trainer to other paraprofessionals. (Exhibit "A"). Ms. Palumbo allegedly called out to the plaintiff and asked him if he worked out, to which the plaintiff responded that he was a trainer. (Exhibit "A"). Ms. Palumbo then allegedly asked the plaintiff, "how would you like to work this out?" Ms. Palumbo allegedly accompanied her comment with a hand gesture, which began at the top of her body and moved downward. (Exhibit "A").

The following day, the plaintiff was allegedly called to a meeting with the Building Principal and Assistant Principal regarding a claim that was made by an anonymous paraprofessional of an uncomfortable comment the plaintiff made. (Exhibit "A"). The substance of the meeting is not addressed in the Amended Complaint other than the plaintiff states he was advised that he would not be formerly written up. (Exhibit "A").

<u>February 6, 2018 Meeting</u>

On February 6, 2018 at 12:45 pm, the plaintiff met with his union representative for a scheduled meeting with Assistant Superintendent Woodberry, Assistant Principal Ebanks and Special Education Director, Melfie. (Exhibit "A"). According to the plaintiff, the purpose of the meeting was to discuss a letter he had written to Dr. Woodberry regarding "the school bus incident". (Exhibit "A"). The referenced "school bus incident" allegedly involved Ms. Palumbo approaching the plaintiff on a school bus and apologizing for making false accusations. (Exhibit "A"). During the meeting, Dr. Woodberry's and Mr. Ebanks' tones were described as "extremely demeaning, condescending, and threatening." (Exhibit "A"). At the conclusion of the meeting, Dr. Woodberry allegedly informed the plaintiff that there would "be an investigation beginning in February." (Exhibit "A"). The Amended Complaint is silent as to the purpose of this alleged guaranteed investigation. (Exhibit "A").

Dr. Woodberry memorialized the February 6, 2018 meeting referenced by the plaintiff in his Amended Complaint by way of a letter to the plaintiff. (See Woodberry letter, dated February 8, 2018, annexed hereto as Exhibit "B"). In reality, the meeting was scheduled to discuss concerns with the plaintiff in his role as a paraprofessional at the District. (Exhibit "B"). During the meeting instances where the plaintiff neglected to properly monitor students to whom he was assigned, where he was not responsive to teachers' directions or instructions, where he failed to give notes to a student, and where he made other staff members feel uncomfortable were addressed. (Exhibit "B"). Specifically, reports of the plaintiff sleeping in class and not working with his assigned students were discussed, as well as an instance where he left his assigned special education student alone in a hallway while he went to the main office to speak to someone. (Exhibit "B"). Other items that were discussed were the plaintiff's use of his cell phone while working with his assigned student; making inappropriate comments to co-workers and teachers, and requests by other schools that the plaintiff not be assigned to students in their building. (Exhibit "B").

At the conclusion of the letter, Dr. Woodberry wrote:

> The behaviors that are described above must not occur moving forward. You must supervise and work with your 1:1 students properly, refrain from using your cell phone in the classroom during class time, be responsive to teachers directives in the classroom, and avoid making comments that might make others feel uncomfortable including discussions of personal relationships and physical appearances. As I stated in the meeting, failure to comply with these reasonable expectations will be grounds for disciplinary action, up to and including a section 75 hearing. (Exhibit "B").

The letter was presented to the plaintiff, who acknowledged receipt, but noted that he was "a 100% not in agreement with its contents." (Exhibit "B").

Assignment to the "Copy Room"

Although no time frame is provided in the Amended Complaint, at some point in time, the plaintiff alleges he was assigned to the "copy room." (Exhibit "A"). The plaintiff was directed to

3

shadow, follow and ask questions of a co-worker there, but the co-worker allegedly ignored him and refused to assist him. (Exhibit "A"). One week after his assignment to the copy room, the plaintiff complained to Mr. Ebanks about his interactions with his co-worker. (Exhibit "A"). In turn, a meeting was scheduled with the plaintiff, his co-worker, Principal Ebanks, and the plaintiff's union representative where the plaintiff's co-workers allegedly expressed her dislike for the plaintiff. (Exhibit "A"). The plaintiff was shortly thereafter removed from the copy room. (Exhibit "A"). According to the Amended Complaint, after this meeting his union representative referred to Principal Ebanks as a "racial bastard" who made sure to take care of his own color, but because said union representative was set to retire, she "kept quiet and made no waves." (Exhibit "A").

<u>October 2, 2018 NYSDHR Complaint</u>

The Amended Complaint references a complaint that the plaintiff filed with the New York State Division of Human Rights ("NYSHDR") in "May or June of 2018." (Exhibit "A"). In fact, on October 2, 2018, the plaintiff filed a Complaint with the NYSDHR alleging that the District discriminated against him on the basis of his race and sex, and in retaliation for filing a NYSDHR Charge. (See NYSDHR Determination, dated April 4, 2019, annexed to Shteierman Declaration as Exhibit "C").

On April 4, 2019, the NYSDHR found that there was no probable cause to believe that the District discriminated or retaliated against the plaintiff. (Exhibit "C"). In so finding, the NYSDHR found that the plaintiff's job performance provided legitimate non-discriminatory reasons for the District's conduct and that the plaintiff was unable to establish that said reasons were merely pretextual, or that the District's actions were the result of animus toward his race and gender. (Exhibit "C"). The EEOC adopted the NYSDHR findings and issued a right-to-sue letter to the

plaintiff on June 25, 2019. (See EEOC Right-to-Sue Letter, dated June 25, 2019, annexed to Shteierman Affirmation as Exhibit "D").

Civil Service Law, Section 75 Charges

Finally, the Amended Complaint attaches a portion of Charges that the District proffered against him on or about November 21, 2018. (Exhibit "A"). Specifically, on that date the District proffered disciplinary charges against the plaintiff pursuant to Civil Service Section 75 charging him with four counts of misconduct and insubordination. (See Section 75 Charges, dated November 21, 2018, annexed to Shteierman Declaration as Exhibit "E"). As detailed in the Charges, during the 2017/2018 and 2018/2019 school years, the plaintiff was charged with numerous acts of misconduct and insubordination. (Exhibit "E"). The list is extensive, however, it includes his failure to take notes to assist the District in conducting behavioral analyses for a disabled student to which he was assigned; making inappropriate comments to students and teachers; arriving late to class; using his cell phone during class; falling asleep on a school bus while monitoring a student; not following the directives of a classroom teacher; letting a student to which he was assigned out of his sight; discussing a dating website during instructional time with a teacher causing her to feel uncomfortable; and yelling at a fellow co-worker. (Exhibit "E").

Stipulation of Settlement and Release

Significantly, on February 15, 2019 and as part of a stipulation of settlement, the plaintiff resigned from his employment with the District in exchange for the withdrawal of the aforementioned Section 75 charges. (See Stipulation of Settlement, dated February 15, 2019, annexed to Shteierman Declaration as Exhibit "F"). As part of that settlement, which was fully executed on March 1, 2019, the plaintiff released the District and its employees from any and all causes of actions or claims under any state or federal law, rule or regulation arising from his

employment with the District and his termination therefrom, including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA"), and the New York State Human Rights Law, Executive Law §296. (Exhibit "F").

November 13, 2019 NYSDHR Complaint

Despite the execution of the aforementioned Release, on or about November 13, 2019, the plaintiff filed yet another complaint with the New York State Division of Human Rights. Again, the plaintiff alleged that District discriminated against him on the basis of his race and sex and in retaliation for filing a complaint. (See New York State Division of Human Rights Complaint, dated November 13, 2019, annexed to Shteierman Declaration as Exhibit "G").

In response to this latest complaint, on May 20, 2020, the DHR issued a no probable cause finding. (See NYSDHR Determination, dated May 20, 2020, annexed to Shteierman Declaration as Exhibit "H"). Specifically, the DHR held that the allegations of racial discrimination, sexual harassment and intimidation were already addressed and determined to have no probable cause in the plaintiff's October 12, 2018 complaint. (Exhibit "H"). Moreover, with respect to the plaintiff's allegations of retaliation for filing a complaint, the DHR found that the only proof of a complaint the plaintiff produced was a letter dated February 12, 2018 which claims that he filed a discrimination and harassment complaint with the District in 2009. (Exhibit "H"). Moreover, not only did the DHR find that there was no evidence to indicate that the District ever received such a letter, it held that there was no temporal proximity between the 2009 letter and the plaintiff's resignation in 2019 to find that District was liable for retaliations. (Exhibit "I"). As such, the DHR dismissed this complaint as well. (Exhibit "H"). The EEOC followed suit and issued a Right to

Sue Letter to the plaintiff on December 17, 2019. (<u>See</u> Right to Sue Letter, dated September 17, 2020, annexed to Amended Complaint).

<u>Instant Lawsuit and Procedural History</u>

Thereafter the plaintiff filed a Complaint against the District, Mr. Woodberry and Mr. Ebanks on November 9, 2020. [<u>See</u> DE # 1]. When plaintiff timely failed to serve said Complaint, the Honorable Court issued an Order on January 28, 2021, giving him until February 17, 2021 by which to serve the defendants or face dismissal of his action. [<u>See</u> DE # 7].

On March 12, 2021, without requesting leave of the court and beyond the twenty (20) day allowable window to amend as set forth in Federal Rule of Civil Procedure 15(a), the plaintiff filed an Amended Complaint which now also named Jennifer Palumbo as a defendant. (Exhibit "A").

The Amended Complaint alleges that during the 2017/2018 school year the plaintiff was discriminated against and subject to retaliation due to his race, age and disability status in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA") and the Americans with Disabilities Act ("ADA"). (Exhibit "A").

**ARGUMENT**

**POINT I**

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 8(a)(2) requires that a Complaint contain a "short and plain statement of the claims showing that the plaintiff is entitled to relief". To avoid dismissal for failure to state a claim, a Complaint must plead enough facts to state a claim to relief that is plausible on its face. <u>Bell Atlantic Corp. v. Twombley</u>, 550 US 544, 570 (2007). A claim has facial plausibility when the Plaintiff pleads factual content that allows the Court to draw the reasonable inference

that the Defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 US 662, 678 (2009), *citing* Twombley, *supra.*

Although detailed factual allegations are not required, a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. *Ashcroft*, *supra.* Nor does a Complaint suffice if it tenders "naked assertions devoid of further factual enhancement." Podlach v. Village of Southampton, 2017 WL 4350433 (E.D.N.Y. 2017), *Report and Recommendation adopted*, 2017 WL 4350434 (E.D.N.Y. 2017), *affirmed* 767 Fed. App'x 200 (2d Cir. 2019). Instead, factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the Complaints allegations are true; to "nudge the claims across the line from conceivable to plausible." Twombley, 550 US at 570.

*Pro se* litigants receive more leeway, and a court reviewing a *pro se* pleading must construe it as raising the strongest arguments it suggests. McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004) *citing* Weinstein v. Albright, 261 F.3d 127, 132 (2d Cir. 2001)). This does not, however, excuse *pro se* litigants from compliance with "relevant rules of procedural and substantive law." Castro v. Simon, 2019 WL 136692 at *3 (E.D.N.Y. Jan. 7, 2019) (*citing* Bell v. Jendell, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013)). The reviewing court "need not argue a *pro se* litigant's case nor create a case for the *pro se* which does not exist." *Id.* And, as in any action, the reviewing court must dismiss a *pro se* complaint which fails to satisfy a pleading requirement. *Id.* Rule 8 demands more than an unadorned, "the Defendant unlawfully harmed me" accusations. Iqbal, 556 US at 678; Wingate v. Deas, 2012 WL 1134893 (E.D.N.Y. 2012).

Finally, and as previously noted, it is well-settled that the Court may consider documents integral to the complaint and documents which the Court can take judicial notice of. The court may consider the following documents without triggering the summary judgment standard: "(1)

documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference into the complaint, (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case. *See* Hayden, International Longshoremen's Ass'n, *supra,* including the arrest record paperwork. *See* Canessa, *supra.*

Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint "relies heavily upon its terms and effect," which renders the document "integral" to the complaint. Chambers v Time Warner, 282 F.3d 147, 153 (2d Cir. 2002). This includes documents either in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit. Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993). A court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice.* Ferrari v County of Suffolk, 790 F.Supp.2d 34, note 4 (E.D.N.Y. 2011).

In this action, all exhibits attached to the Shteierman Declaration are either incorporated by reference by the Complaint, integral to the complaint, or documents which this court must take judicial notice of and therefore may be considered by the Court on 12(b)(6) review.

## POINT II

## THE PLAINTIFF HAS RELEASED THE DISTRICT FROM THE CLAIMS ASSERTED IN THE AMENDED COMPLAINT

The instant action must be dismissed as the plaintiff has previously released the defendants from such claims. Generally, a valid release constitutes a complete bar to an action on a claim which is the subject of the release. *See* Centro Empresarial S.A. v. America Movil, S.A.B. de C.V., 17 N.Y.3d 269, 276 (2011). Releases, including releases of employment discrimination claims, are generally analyzed the same way any release of claims would be analyzed, that is, as a contract

whose interpretation is governed by principles of contract law. <u>Johnson v. Lebanese Am. Univ.</u>, 84 A.D.3d 427, 429-430 (1st Dept. 2011).

A contract is unambiguous if the language it uses has a definite and precise meaning, unattended by danger of misconception in the purport of the agreement itself, and concerning which there is no reasonable basis for a difference of opinion. <u>Greenfield v. Phillies Records, Inc.</u>, 98 N.Y.S.2d 562, 569-70 (2002). A release will not be treated lightly and as with any contract, when the language of a release is clear and unambiguous, it is binding on the parties unless it is shown that it was procured by fraud, duress, overreaching, illegality or mutual mistake. <u>Allen v. Riese Org., Inc.</u>, 106 A.D.3d 514, 516 (1st Dept. 2013).

Here, paragraph 7 of the Settlement Agreement the plaintiff executed in furtherance of resolving the Section 75 Charges proffered against him is clear and unambiguous. (Exhibit "F"). The plain language of that paragraph provided that the plaintiff agreed to release the Board of Education of the Middle Country Central School District, the Middle Country Central School District and its employees from any and all liability, claims, charges, causes of action or other legal proceedings, that he may have, or may have had, from the beginning of time, up to and including the date of this Agreement, arising out of, or in connection with [his] employment with the District or the cessation thereof. (Exhibit "F"). The Release specifically included a waiver of any and all federal and state claims for employment discrimination including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA"), and the New York State Human Rights Law, Executive Law §296. (Exhibit "F").

Paragraph 7 is clearly and unambiguously dispositive of this matter in that it prohibits the Plaintiff from bringing this lawsuit. Moreover, Paragraph 8 of the Agreement states that the

plaintiff entered into the agreement "freely, knowingly and openly, without coercion or duress and that in accepting its terms he voluntarily waived any statutory, contractual or constitutional right he had with respect to his employment with the District." (Exhibit "F").  Additionally, Paragraph 9 of that Agreement contained an affirmation from the plaintiff that he was represented by counsel throughout and that he was satisfied with such representation. (Exhibit "F").

 As such, the Release is fully enforceable and serves as a bar to the instant action, which it is respectfully submitted must therefore be dismissed.

## POINT III

## PLAINTIFF'S RACE AND GENDER DISCRIMINATION CLAIMS ARE TIME-BARRED

 A review of the procedural history provided indicates that the plaintiff has not timely asserted his race and gender discrimination claims and thus, such claims must be dismissed. Specifically, on October 12, 2018, the plaintiff filed a Complaint with the New York State Division of Human Rights alleging that he was discriminated against on the basis of his race and gender and that disciplinary charges were proffered against him by the District in retaliation for the filing of his NYSDHR Complaint. (Exhibit "C"). On April 4, 2019 the NYSDHR found that the plaintiff's job performance provided legitimate non-discriminatory reasons for the District's conduct and that the plaintiff was unable to establish that said reasons were merely pretextual, or that the District's actions were the result of animus toward his race and gender or in retaliation for engaging in protected activity. (Exhibit "C"). The EEOC adopted the NYSDHR findings and issued a right-to-sue letter to the plaintiff on June 25, 2019. (Exhibit "D").

 Under Title VII, an aggrieved person has ninety (90) days following the issuance of a right-to-sue letter in which to commence an action. *See* 42 U.S.C. § 2000e–5(f)(1). An action is commenced by filing a complaint with the court and an action not filed within ninety days must

be dismissed. *See generally*, Holowecki v. Fed. Exp. Corp., 440 F.3d 558, 563 (2d Cir. 2006), *aff'd*, 552 U.S. 389, 128 S. Ct. 1147 (2008); Johnson v. Al Tech Specialties Steel Corp., 731 F.2d 143, 145 (2d Cir. 1984).

Here, the plaintiff filed a NYSDHR Complaint on October 2, 2018 alleging race and gender discrimination, as well as retaliation. (Exhibit "C"). Prior to that on or about September 28, 2018, the plaintiff was subject to the complained of adverse employment action which gave rise to said complaint when he was reassigned to home by the District. (Exhibit "C") On April 4, 2019, the NYSDHR found "no probable cause" that the plaintiff had been discriminated against based on his race and gender, or that he had been retaliated against. (Exhibit "C"). On June 25, 2019, the EEOC issued the plaintiff a right-to-sue letter which gave him ninety (90) days by which to file the instant suit. (Exhibit "D"). Despite this, the plaintiff did not file a complaint against the District alleging race and gender discrimination until November 9, 2020, more than one year after the issuance of the EEOC letter. [See DE # 1]. Hence, the instant Amended Complaint is not timely.

In bringing the instant action, plaintiff improperly seeks to rely on the "Right to Sue Letter" issued by the EEOC on September 17, 2020 in filing the instant Complaint. However, that "Right to Sue Letter" was issued following the determination by the NYSDHR that the plaintiff's discrimination and retaliation claims had previously been asserted in his October 2, 2018 complaint to which the NYSDHR issued a "no probable cause" finding. As such, the time by which plaintiff was required to assert such discrimination and retaliation claims began to run upon the issuance of the EEOC right to sue letter issued on June 25, 2019, and not upon the issuance of the September 17, 2020 "Right to Sue Letter" upon which the instant Amended Complaint relies. *See* Bowen-Hooks v. City of New York, 13 F. Supp. 3d 179, 202 (E.D.N.Y. 2014) (holding that a

plaintiff may not bring claims "involving exactly the same facts" that comprised an earlier right-to-sue letter on which a plaintiff did not act).

Thus, plaintiff did not timely file suit against the defendants to permissibly assert his race and gender discrimination, and retaliation claims and therefore, they must be dismissed.

## POINT IV

### EVEN IF CONSIDERED, THE PLAINTIFF'S TITLE VII CLAIMS MUST BE DISMISSED

As indicated, the plaintiff's Title VII gender discrimination claims are time barred and the plaintiff has previously released the District from such claims. However, even if substantively considered by the Honorable Court, the Complaint does not set forth a cognizable claim of discrimination.

Gender-based employment discrimination claims under Title VII are all analyzed under the three-step burden shifting framework set forth in *McDonnell Douglas Corp v. Green*. Feingold v. New York, 366 F.3d 138, 159 (2d Cir. 2004). The *McDonnell Douglas* framework requires that the plaintiff first must make a *prima facie* case of discrimination by demonstrating that (1) he is a member of a protected class, (2) he was qualified for the position, (3) he suffered an adverse employment action, and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *See* McDonnell Douglas, 411 U.S. at 802.

Here, the Amended Complaint does not specify the gender discrimination allegedly suffered by the plaintiff. In fact, other than marking the box for such claim in Section III(D) in the Amended Complaint there are no facts alleged that any employment action was taken by the District as a result of animus of the plaintiff's gender. (Exhibit "A"). Rather, in the four appended pages to the Amended Complaint, the plaintiff identifies various male co-workers who he alleges were treated more favorably than he, therefore refuting any claim that the District harbored

discriminatory animus toward the plaintiff because of his gender. (Exhibit "A"). As such, plaintiff's gender discrimination claims must be dismissed.

## POINT V

## THE COMPLAINT DOES NOT STATE AN AGE DISCRIMINATION CLAIM

Once again, the plaintiff has previously released the defendants from any claims arising out of the ADEA and therefore, this claim must be dismissed[2]. Even if considered, the Amended Complaint does not even specify the plaintiff's age to allow this Court to consider whether he is within the protected class of said statute. Moreover, the Amended Complaint is devoid of any allegation that the District took any action due to animus towards the plaintiff's age. Thus, it is respectfully submitted that such claim should be dismissed.

ADEA claims are analyzed under the familiar "McDonnell Douglas framework." McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). To establish a prima facie case of age discrimination under the ADEA, the Complainant must demonstrate the following: (1) he was within the protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. See Terry v. Ashcroft, 336 F.3d 128, 137-138 (2d Cir. 2003).

Assuming a prima facie case is established, the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for the adverse employment action. Leibowitz v. Cornell University, 584 F.3d 487, 499 (2d Cir. 2009). If the employer clears this hurdle, "the presumption of discrimination" created by the prima facie case drops out of the analysis, and the employer will be entitled to judgment unless the employee can point to evidence that reasonably supports a

---

[2] The Court will take note that Paragraph 10 of the Settlement Agreement is in compliance with the Older Workers Benefit Protection Act, wherein the plaintiff was given a seven-day revocation period following the execution of the Agreement and voluntarily waived the twenty-one (21) day pre-execution consideration period. See 29 U.S.C. §626, et seq. Thus, the Release is valid against plaintiff's ADEA claims.

finding of prohibited discrimination.  Mario v. P&C Food Markets, 313 F.3d 758, 767 (2d Cir. 2002).

Under federal law, in response to an employer's legitimate and nondiscriminatory explanation, a claimant must now show that those explanations are mere pretext and that his or her age was the ***but for*** reason, and not just a contributing or motivating factor, for an adverse employment action.  *See* Gorzynski v. Jet Blue Airways Corp., 596 F.3d 93, 106 (2d Cir. 2010); Dimitracopoulos v. City of New York, 26 F.Supp.3d 200, 213 (E.D.N.Y. 2014).

Fundamentally, the Amended Complaint is silent as to the plaintiff's age and therefore it is impossible to assess whether he falls within the statute's protected class. Moreover, the Amended Complaint contains no facts which would establish that the plaintiff's age was the "but for" reason behind the alleged adverse employment action.  Accordingly, it is respectfully submitted that such claim must be dismissed.

## POINT VI

## THE COMPLAINT DOES NOT STATE AN ADA VIOLATION

Initially and at the risk of redundancy, plaintiff has released the defendants from all claims arising out of his employment and therefore, plaintiff's ADA claim must be dismissed. However, even if substantively considered, the Amended Complaint contains no facts which show that any action taken by the Defendants was due to the plaintiff's disability.

To establish a claim for disability discrimination, plaintiff must show that: (1) his employer is subject to the ADA; (2) he suffers from a disability within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered an adverse employment action because of his disability. *See*

Jacques v. DiMarzio, Inc., 386 F.3d 192, 198 (2d Cir. 2004) *citing* Cameron v. Cmty. Aid for Retarded Children, Inc., 335 F.3d 60, 63 (2d Cir. 2003). With respect to the third element, "it is generally the responsibility of the individual with a disability to inform the employer that an accommodation is needed." McElwee v. Cty. of Orange, 700 F.3d 635, 641-42 (2d Cir. 2012) (internal quotation marks and citation omitted). "

In the instant matter, other than listing "vertigo" and "heart" as disabilities, the Amended Complaint does not state how the defendants discriminated against him because of those disabilities. (Exhibit "A"). In fact, the Amended Complaint does not set forth any facts that the plaintiff actually disclosed his disabilities to the defendants or that he requested any accommodations.

The Amended Complaint does not state an ADA violation and it is respectfully submitted that such claim must be dismissed.

## POINT VII

### PLAINTIFF'S TITLE VII RETALIATION CLAIM MUST BE DISMISSED

As detailed above, plaintiff has previously released the defendants from any claims related to his employment, and moreover, plaintiff's retaliation claim is time barred as the plaintiff failed to timely commence the instant suit after receipt of a Right-to-Sue letter from the EEOC on June 25, 2019. (Exhibit "D"). *See* Bowen-Hooks, *supra*. Notwithstanding, the Amended Complaint fails to set forth a Title VII retaliation claim.

For a retaliation claim to survive a motion for judgment on the pleadings or a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse

employment action—against him, (2) "because" he has opposed any unlawful employment practice. <u>Vega v. Hempstead Union Free Sch. Dist.</u>, 801 F.3d 72, 90 (2d Cir. 2015).

As for causation, a plaintiff must plausibly plead a connection between the act and his engagement in protected activity. *See* 42 U.S.C. § 2000e–3(a). A retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action. *See* <u>Cifra v. Gen. Elec. Co.</u>, 252 F.3d 205, 217 (2d Cir. 2001) ("The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action.").

Unlike Title VII discrimination claims, however, for an adverse retaliatory action to be "because" a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a "but-for" cause of the employer's adverse action. *See* <u>Univ. of Tex. Sw. Med. Ctr. v. Nassar</u>, 133 S.Ct. 2517, 2533 (2013). It is not enough that retaliation was a "substantial" or "motivating" factor in the employer's decision. *Id.*

Here, the Amended Complaint fails to identify with any specificity the protected activity engaged in by the plaintiff which was followed closely in time by some adverse employment action undertaken by the District. Rather, the Amended Complaint makes vague reference to a letter sent to Assistant Superintendent Woodberry, which is the only activity of the plaintiff that could be considered a "protected activity," but does not specify when such letter was sent or the alleged temporally connected adverse employment action sufficient to state such a claim. (Exhibit "A")

Accordingly, for the reasons stated herein, plaintiff's retaliation claim must be dismissed as a matter of law.

## <u>CONCLUSION</u>

For the reasons set forth above, defendants respectfully request that this court grant their motion and dismiss plaintiff's Complaint in its entirety.

Dated: July 27, 2021
      Nesconset, New York

JOSHUA S. SHTEIERMAN
