UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X     For Online Publication Only

ROBERT PERRY,

                                      Plaintiff,     **ORDER**
                                           20-CV-5656 (JMA) (ARL)

      -against-

**FILED**
**CLERK**
1:41 pm, Sep 26, 2022
**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

HALF HOLLOW HILLS CENTRAL SCHOOL DISTRICT,
DR. JEFFREY WOODBERRY, MR. WAYNE EBANKS,
AND JENNIFER PALUMBO,

                                    Defendants.

--------------------------------------------------------------------X

**AZRACK, United States District Judge:**

        On November 19, 2020 pro se Plaintiff Robert Perry ("Plaintiff" or "Perry") commenced

this action against Defendants Half Hollow Hills Central School District, Assistant Superintendent

Dr. Jeffrey Woodberry ("Woodberry"), and Assistant Principal Wayne Ebanks ("Ebanks"),

(together, the "District" or "Defendants") alleging discrimination and retaliation in violation of

Title VII, the ADEA, and the ADA. (ECF No. 1.) Defendants now move to dismiss the Complaint

in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 45, Defendants'

Motion to Dismiss ("Def's Mot.")) For the reasons stated herein, Defendants' motion is

GRANTED.

## I. BACKGROUND

        The following facts, set forth in the Complaint and the attached exhibits, are presumed

true for purposes of Defendants' motion to dismiss.[1]

---

[1] In deciding a motion to dismiss, the Court may consider exhibits which are attached or integral to the complaint. Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004). Because Plaintiff filed his complaints pro se, the Court can also consider Plaintiff's factual allegations in his opposition to Defendants' motions as well as documents that he has attached to his opposition papers. See, e.g., Walker v. Schult, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court

A. **Facts**

The Plaintiff Mr. Perry was a paraprofessional formerly employed by the District. (See, generally, ECF Nos. 1, 13.) Plaintiff commenced employment with the District in or around September 6, 2009 and resigned February 15, 2019 pursuant to a stipulation of settlement and general release. (ECF No. 45-13 at 7; ECF No. 45-7 at 3.)  As a paraprofessional, Plaintiff was assigned to teachers and students in special education settings. (Id.) Among his responsibilities were supporting individual disabled students, assisting teachers and other paraprofessionals, and serving as a bus monitor in an after-school program. (Id.)

During the 2017-2018 school year, Plaintiff alleges that the District engaged in a pattern of discrimination and retaliation towards him on account of his race and gender ("Caucasian male") and for complaining of a hostile work environment. (ECF Nos. 1, 13 at 9.) Specifically, Plaintiff makes the following allegations:

1. **April 2017 Incident**

In April 2017, Plaintiff alleges that another paraprofessional Jennifer Palumbo ("Palumbo") falsely accused him of sexual harassment. (ECF Nos. 1,13 at 8.) During a class session, the paraprofessionals had a conversation amongst themselves about personal fitness. (Id.) Ms. Palumbo asked Plaintiff if he "worked out" to which he "simply said" that he was a personal trainer. (Id.) In response, Ms. Palumbo asked Plaintiff "how would you like to work this out?" while physically gesturing with her body in a suggestive manner. (Id.) The following day, School Principal Michael Catapano and Assistant Principal Ebanks informed Plaintiff that a

---

deciding a motion to dismiss may consider factual allegations made by a pro se party in his papers opposing the motion."); Alsaifullah  v. Furco, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013).

[1] Because plaintiff's filings are not consecutively paginated, the Court refers to the electronic case files system ("ECF") pagination for clarity.

paraprofessional had made an anonymous complaint concerning an inappropriate comment made by him. (Id.) Some months later, during a school bus ride, Plaintiff alleges that Ms. Palumbo approached him and apologized for falsely accusing him of sexual harassment. (ECF No. 1, 13 at 9.) Ms. Palumbo told Plaintiff that it was other paraprofessionals who "forced her" to make the anonymous complaint about him. (Id.)

### 2. February 6, 2018 Meeting

On February 6, 2018, Plaintiff and his union representative attended a meeting with Assistant Superintendent Woodberry, Assistant Principal Ebanks and Special Education Director Michelle Melfie ("Melfie"). (Id. at 8.) Plaintiff claims this meeting was prompted by a letter he wrote to Assistant Superintendent Woodberry alleging that he was being mistreated, retaliated against, and subject to a hostile work environment. (Id.; ECF No 45-14 at 9.) Throughout the meeting, Plaintiff stated the Defendants addressed him in an "extremely demeaning, condescending, and threatening" manner. (ECF Nos. 1,13 at 9.) When Plaintiff attempted to explain the incidents involving his interactions with Ms. Palumbo and others, Assistant Superintendent Woodberry and Assistant Principal Ebanks allegedly became defensive, "got heated" and began to yell at him. (ECF No 45-14 at 7.) Plaintiff felt that he was not afforded an opportunity to "clarify his character" or provide his account of the classroom and school bus incidents involving Ms. Palumbo. (ECF Nos. 1,13 at 9.) Sometime during the meeting, Assistant Superintendent Woodberry told Plaintiff there would be "an investigation" into the event involving Ms. Palumbo. (Id.) Plaintiff, however, claims the District never provided him an update. (Id.)

Following the meeting, Assistant Superintendent Woodberry wrote a letter summarizing the February 6, 2018 meeting. (ECF No. 45-3 at 2, (the "Feb. Woodbury Lttr.")). In the letter dated February 8, 2018, Assistant Superintendent Woodberry stated that the actual purpose of the

February 6th meeting was to address concerns raised about Plaintiff's work performance.  (Id.)
According to Assistant Principal Ebanks and Special Education Coordinator Melfie, there were
multiple reports from teachers and staff that Plaintiff, among other issues, "neglected to properly
monitor students," was "[un]responsive to teachers' directions or instructions," and "several
reports" that Plaintiff made other staff members feel uncomfortable.  (Id.)

Assistant Superintendent Woodberry added that Plaintiff's conduct had prompted teachers
and paraprofessionals at another school to specifically request that Plaintiff not be assigned to their
students or classrooms.  (Id.)  There were also similar claims at the other school that Plaintiff had
a history of making inappropriate comments.  (Id.)

Assistant Superintendent Woodberry  concluded the letter directing Plaintiff to correct his
behavior, specifically:

> You must supervise and work with your 1 : 1 students properly,
> refrain from using your cell phone in the classroom during class
> time, be responsive to teachers directives in the classroom.  You
> must supervise and, avoid making comments that might make others
> feel uncomfortable including discussions of personal relationships
> and physical appearances.

(Id.) Plaintiff was also warned that his failure to comply with the stated expectations "[would] be
grounds for disciplinary action, up to and including a Section 75 hearing." (Id.) Plaintiff signed
the letter acknowledging receipt but wrote on the letter that he was "100% not in agreement with
its contents." (Id.)

Plaintiff signed the letter acknowledging receipt of it but noted that he was "100% not in
agreement" with its contents.  (Feb. Woodbury Lttr. at 3.)

### 3.  February 12, 2018 Meeting

The following week, on February 12, 2018, Assistant Principal Ebanks held another
meeting with Plaintiff with a paraprofessional representative present.  (ECF No. 45-14 at 5.) In the

letter summarizing the meeting, Assistant Principal Ebanks stated the purpose of it was to address Plaintiff's duties as a bus monitor in the after-school program. (Id.) Plaintiff purportedly exhibited motion sickness which prevented him from supervising and managing special needs students during their dismissal to their buses. (Id.) At the meeting, Plaintiff disagreed with Assistant Principal Ebanks and insisted that he had performed his bus monitor duties. (Id.) Assistant Principal Ebanks then formally removed Plaintiff from bus monitor duties though Plaintiff had previously informed Ms. Palumbo, a supervisor in the after-school program, that he was no longer able to work after-school. (Id.) Plaintiff signed the letter acknowledging receipt of it and wrote a comment on the letter that the true reason he was no longer available was that he did not feel comfortable working with Ms. Palumbo. (Id.)

On June 22, 2018, Plaintiff received an evaluation from Assistant Principal Ebanks which rated Plaintiff's performance overall as "needs improvement." (ECF No. 45-4 at 3; ECF No. 45-14.) On September 28, 2018, following an incident where a student had a "meltdown" due to Plaintiff's absence from the classroom, Plaintiff was removed from one-on-one student assignments and he was reassigned to his home. (Id.)

### 4. The First NYSDHR Complaint

On October 2, 2018, Plaintiff filed a verified complaint with the New York State Division of Human Rights ("State Division"). (ECF No. 45-4, (the "First NYSDHR Determination")). The First NYSDHR Complaint charged that the District discriminated against him on the basis of his race and sex, and in retaliation for filing earlier NYSDHR complaints on March 17, 2010 and May 23, 2018 in violation of the New York State Human Rights Law ("NYSHRL"). (Id.)

Before the NYSDHR issued its determination as to Plaintiff's First NYSDHR Complaint, on November 21, 2018, the District charged Plaintiff with four counts of misconduct/incompetence

and insubordination pursuant to Section 75 of the Civil Service Law of the State of New York ("Section 75").  (ECF No. 45-6, "Section 75 Charges.") The Section 75 Charges listed over sixty (60) specifications alleging instances where Plaintiff acted inappropriately and or failed to carry out his duties as a paraprofessional.  (Id.)

## 5. The Settlement Agreement

On February 19, 2019, the District and Plaintiff entered into a settlement agreement and release of claims related to Plaintiff's Section 75 disciplinary charges.  (ECF No. 45-7, "Settlement Agreement.") In the Settlement Agreement—which noted that both parties were represented by counsel throughout the process—Plaintiff agreed to irrevocably resign from his position as of February 15, 2019, and withdraw with prejudice any and all claims he had pending against the District.  (Id. at 1.)

The Settlement Agreement further discharged and released the District and its employees from any and all causes of actions or claims under any state or federal law, rule or regulation arising from his employment with the District and his termination therefrom, including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964 ("Title VII") , the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA") , and the NYSHRL.  The Settlement Agreement became fully executed on March 1, 2019.  (Id. at 7.)

In consideration of Plaintiff's irrevocable resignation and general release, the District agreed to withdraw the Section 75 disciplinary charges against him, provide a neutral letter of reference, among other things.  Of particular relevance for this case, the Settlement Agreement also memorialized that:

> [T]he parties […] have held discussion in which they were
> represented by counsel, have had all term and conditions of this

Stipulation thoroughly explained, and now freely consent to enter into this Stipulation, such consent not having been induced by fraud, duress, or any other influence;

8. [Plaintiff] acknowledges that he has entered into this Stipulation freely, knowingly and openly, without coercion or duress , and that in accepting its terms he voluntarily waives any statutory, contractual or constitutional rights he has , had or may have had in this matter pursuant to the Civil Service Law or other provision of law.

9. [Plaintiff] affirms that he has had access to and has consulted with counsel throughout these proceedings concerning the ramifications of this Stipulation and is satisfied with the legal representation he has received in all respects.

(Settlement Agreement at 1, ¶¶ 8-9.)  Plaintiff's counsel for the Section 75 proceedings signed the Settlement Agreement on February 15, 2019.  (Settlement Agreement at 7.)  Plaintiff tendered his resignation that same day, and then countersigned on March 1, 2019.  (Id. at 7.)

Plaintiff admits that he signed the Settlement Agreement, and Plaintiff does not challenge the authenticity and accuracy of the Settlement Agreement before the Court.  (ECF No. 45-14; ECF No. 42 at 6-8.)  Plaintiff, however, insists that he signed the Settlement Agreement under duress and coercion.  (Id.)

### 6.  The State Division's Determination of the First NYSDHR Complaint

On April 4, 2019, about a month after Plaintiff executed the Settlement Agreement, the State Division issued its findings regarding Plaintiff's First NYSDHR Complaint.  (See First NYSDHR Determination.) The State Division found "no probable cause" with respect to Plaintiff's discrimination and retaliation claims.  (Id.)  Its investigation determined that Plaintiff's history of job performance issues provided legitimate non-discriminatory reasons for the actions taken by the District and that Plaintiff was unable to establish that the District's explanations were

merely pretextual, or that the District's actions were the result of animus toward his race and gender.  (Id. at 3-4.)

The State Division noted that most of Plaintiff's professional evaluations were satisfactory, except for the years 2014 and 2018.  For those years, Assistant Principal Ebanks rated him overall as "needs improvement" including in the categories related to his professional relationships and attitude.  (Id.) The State Division also noted that Plaintiff had received positive performance evaluations from Assistant Principal Ebanks  for the years 2016 and 2017.  (Id.)  At the time of the State Division determination, the Section 75 disciplinary charges were not resolved.  (Id.)

While the State Division found a "contentious environment" between Plaintiff and the District personnel, it was also found that Plaintiff's "own submissions support[ed] that he was at the very least a contributor if not protagonist in the interpersonal issues." (Id.) Plaintiff's complaint was dismissed and closed.  (Id.)  The EEOC subsequently adopted the State Division's investigation findings and the "no probable cause" determination.  (ECF No. 45-5.) Plaintiff was issued a right-to-sue letter from the EEOC on June 25, 2019.  (Id.)

**7.  The Second NYSDHR Complaint**

On November 13, 2019, Plaintiff filed a second verified complaint with NYSDHR.  (ECF No. 45-8, ("Second NYSDHR Compl.")).  The Second NYSDHR Complaint, in an identical fashion as the first, alleged that the District, namely Assistant Superintendent Woodberry and Assistant Principal Ebanks, discriminated against Plaintiff because he was a Caucasian male and retaliated against him for filing a NYSDHR complaint.  (Id.) Plaintiff averred that the District had suspended him and "forced [him] out of [his] position" after he wrote "a letter to the administration" about being mistreated.  (Second NYSDHR Compl. at 5.)

On May 20, 2020, the State Division issued a "no probable cause" determination and dismissed Plaintiff's Second NYSDHR Complaint on grounds that he had not provided sufficient evidence to support a prima facie case of unlawful discriminatory acts. (ECF No. 45-9, "Second NYSDHR Determination.") The State Division's letter found that Plaintiff's grievances were "already addressed and determined to have no probable cause in [the] previous complaint with the Division." (Second NYSDHR Determination at 1.) The investigation from Plaintiff's first complaint revealed that he "had been counseled and disciplined at the District for multiple reports of alleged sexual harassment and other issues." (Second NYSDHR Determination at 3.) The Section 75 disciplinary charges were brought against him because his job performance was unsatisfactory and he had a series of problematic interactions with other staff members. (Id.)

As to Plaintiff's claims of retaliation, the State Division, determined that he had not demonstrated he suffered a harm or adverse action at any time after March 1, 2019. (Id.) Plaintiff failed to provide or otherwise substantiate his claim that he wrote a letter to the District which prompted the retaliatory behavior. (Id.) While Plaintiff claims to have filed a discrimination and harassment complaint in 2009 against the District, the State Division found no record that the District ever received this letter. (Id.) The State Division concluded that the length of time between Plaintiff's allegations were too attenuated to be related. (Id.)

The State Division also noted that "while [Plaintiff was] represented by counsel, [he] entered into a stipulation of settlement concerning his prior New York State Division Human Rights charge, in which he filed a complaint based on the same set of facts, and Section 75 charges brought against him." (Second NYSDHR Determination at 2.) Plaintiff's second complaint was dismissed and closed. (Id. at 3.) The EEOC subsequently adopted the State Division's

investigation findings and the "no probable cause" determination.  (ECF Nos. 1, 13 at 14; ECF No. 45-2 at 10.)  On September 17, 2020, the EEOC issued Plaintiff a right-to-sue letter.  (Id.)

On November 19, 2020, Plaintiff commenced this instant action.  On or about March 11, 2021, Plaintiff filed an amended complaint which recited the same factual allegations against the District and added Ms. Palumbo as a defendant.  (ECF No. 13.)

## II. DISCUSSION

### A.  Standard for Motion to Dismiss for Failure to State a Claim

On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).  To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009).  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotation marks omitted).  "In keeping with these principles," the Supreme Court has stated, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 679.

The Court is mindful that when considering a motion to dismiss a pro se complaint, the court must construe the complaint liberally and interpret the complaint "to raise the strongest arguments they suggest." Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006).  However, a pro se plaintiff must still plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. 544 at 570; see also Harris v. Mills, 572 F.3d 66, 72 (2d

Cir. 2009)

In deciding a motion to dismiss, the Court may consider exhibits which are attached or integral to the complaint.  Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004).  Because Plaintiff filed his complaints pro se, the Court can also consider Plaintiff's factual allegations in his opposition to Defendants' motions as well as documents that he has attached to his opposition papers.  See, e.g., Walker v. Schult, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a pro se party in his papers opposing the motion."); Alsaifullah  v. Furco, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013).[2]

Although the plaintiff's allegations are taken as true, the claim may still fail as a matter of law if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle it to relief, or if the claim is not legally feasible.  Tamondong v. GMAC Com. Credit LLC, No. 06 CIV. 770, 2006 WL 2019755, at *2 (S.D.N.Y. July 13, 2006).  Accordingly, a claim can only be dismissed if " 'no relief could be granted under any set of facts that could be proved consistent with the allegations."  (Id.)

## B.  Preclusive Effect of the Settlement Agreement

As a threshold matter, the Court first considers whether the Settlement Agreement bars Plaintiff's claims in this instant case.  It is undisputed that the District and Plaintiff entered into a stipulation of settlement and general release through which Plaintiff agreed, inter alia, to tender

---

[2] At the pleading stage, the court may also consider the following documents: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference into the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.  Moreover, a pro se plaintiff's papers in response to a defendant's motion to dismiss for failure to state a claim may be considered as effectively amending the allegations of his complaint—to the extent those papers are consistent with the allegations in the complaint." Trombley v. O'Neill, 929 F. Supp. 2d 81, 93 (N.D.N.Y. 2013)

his resignation in exchange for the withdrawal of the Section 75 charges.  (See, generally, Def's Mot.; ECF No. 45-13, 45-14 "Pl's Opp.")

The Settlement Agreement provided a clear and unambiguous release discharging, in the broadest terms, the District and its employees from any and all causes actions or claims under any state or federal law arising from his employment and termination, including the claims currently before this Court – i.e., Plaintiff's Title VII, ADA, and ADEA claims.  (ECF No. 45-7, Stipulation of Settlement and General Release ("Settlement Agreement") at 11.) In signing the agreement, Plaintiff also acknowledged that he received satisfactory legal representation.  (Id. at 7.)  In short, Plaintiff agreed to not bring any claim against the District or its employees that he could have brought as of the date of execution of the Settlement Agreement.

Plaintiff admits signing the Settlement Agreement and does not argue that the terms are unclear or were ambiguous.  Rather, Plaintiff argues that the settlement agreement should not preclude his lawsuit because he was "under duress and coercion" when he entered into the Settlement Agreement.  (ECF No. 45-14, Pl's Opp. at 1.) Even construing his arguments liberally, Plaintiff has not plausibly alleged that he executed the settlement under duress or coercion.

### 1. Plaintiff Waived His Claims Under the Settlement Agreement

Courts construe settlement agreement and release of claims according to general principles of contract law.  See Collins v. Harrison–Bodem, 303 F.3d 429, 433 (2d Cir. 2002).  This includes federal discrimination or retaliation claims which an employee may waive if the waiver is knowingly and voluntarily made.  See Alexander v. Gardner–Denver Co., 415 U.S. 36, 52, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) (waiver of Title VII rights would have to be "knowing and voluntary" to be valid); Richardson v. Comm'n on Human Rights & Opportunities, 532 F.3d 114,

121 (2d Cir. 2008) (same); Bormann v. AT & T Commc'ns, Inc., 875 F.2d 399, 402 (2d Cir. 1989)

(same and analogizing the ADEA to Title VII and ADA).

To determine whether a waiver was knowingly and voluntarily made, courts examine the

"totality of the circumstances" which include the following non-exhaustive factors:

> (1) the plaintiff's education and business experience, (2) the amount
> of time the plaintiff had possession of or access to the agreement
> before signing it, (3) the role of plaintiff in deciding the terms of the
> agreement, (4) the clarity of the agreement, (5) whether the plaintiff
> was represented by or consulted with an attorney, and (6) whether
> the consideration given in exchange for the waiver exceeds [any]
> benefits to which the [plaintiff] was already entitled by contract or
> law. (7) whether the employer encouraged the employee to consult
> with an attorney and whether the employee had a fair opportunity to
> do so.

Borman at 403.

In applying the test, the record before the Court indicates that, under the totality of the

circumstances, that Plaintiff signed the Settlement Agreement knowingly and voluntarily. Plaintiff

has not alleged that he was not provided adequate time to review or access the agreement, was

unclear as to its terms, or that he was discouraged from consulting legal counsel. Instead, attempts

to rely on a duress defense, asserting that the District engaged in various "bullying tactics"

including "intimidating him with lies" to force him out of his position. (ECF No. 45-14, Pl's Opp.

at 1.)

## 2. Plaintiff's Duress Defense Fails

"To repudiate an agreement on grounds that it was procured by duress requires a showing

of both a wrongful threat and the effect of precluding the exercise of free will." United States v.

Twenty Miljam-350 IED Jammers, 669 F.3d 78, 88 (2d Cir. 2011) (quoting In re Guttenplan, 634

N.Y.S.2d 702, 703 (1st Dep't 1995)).

"The person claiming duress must act promptly to repudiate the contract or release or he will be deemed to have waived his right to do so." VKK Corp. v. Nat'l Football League, 244 F.3d at 122 (quoting DiRose v. PK Mgmt. Corp., 691 F.2d 628, 633 (2d Cir. 1982)).  New York courts have not established a bright line regarding what constitutes timely repudiation.  However, courts in this circuit have found that periods of time ranging from four to twenty-four months exceeded the "prompt" repudiation requirement.  See, e.g., United States, 669 F.3d at 91.  If a plaintiff does not promptly repudiate the contract or release, he will be deemed to have ratified it.  VKK Corp., 244 F.3d 114, at 122–23.  A party may ratify a contract by remaining silent or acquiescing in the contract for a period of time after the party has the opportunity to avoid it, or by acting upon it, performing under it, or affirmatively acknowledging it.  Id. (internal citations omitted).

Plaintiff's allegations fail to plausibly allege any form of duress, and in any event, he failed to timely repudiate the agreement.

Plaintiff never identifies any specific threats the District purportedly lodged against him to compel him to sign the Settlement Agreement.  The following documents, which Plaintiff has attached to his opposition, also do not support his claim of duress and coercion:

(1) A negative performance evaluation issued by Assistant Principal Ebanks dated June 2014.

(2) A letter dated February 8, 2018 from Assistant Superintendent Woodbury to Plaintiff summarizing the February 6, 2018 meeting.

(3) A letter dated February 15, 2018 from Assistant Principal Ebanks to Plaintiff dated February 15, 2018, summarizing the February 12, 2018 meeting.

(4) A negative performance evaluation issued by Assistant Principal Ebanks dated June 22, 2018.

(5) A record from Plaintiff to NYSDHR dated March 31, 2020 describing Plaintiff's grievances with the claim process and allegations that the District treated him differently based on his race.

14

After Defendants served and filed their reply brief, Plaintiff filed a letter on January 3, 2022, which states:

> Regarding the threats that both Dr. Woodberry and Mr. Ebanks directed at me if I did not resign, they warned me.  Dr. Woodberry was adamant that I had some nerve even to mention that Jennifer Palumbo admitted she was sorry for what happened on the bus.  In this meeting he humiliated me, criticized me, bullied me, harassed me.  Precisely the opposite of what should have occurred.  The tone and volume of his voice was critically threatening.  During this time Lori Levine, Union Rep, who was also attending the meet[ing] mentioned (whispering) when we exited the meeting she was very nervous and scared, threatened about Dr. Woodberry's irate behavior that was not rational.

(ECF No. 46.)[3]

First, Plaintiff's papers do not plausibly allege a wrongful threat that precluded the exercise of his free will.  Plaintiff does not identify any specific threatening statements or actions.  His allegations also lack sufficient details about the specific time, place, and persons involved in the unspecified threats.  Moreover, none of the incidents that Plaintiff references in his opposition brief have any connection with his execution of the settlement agreement.  For example, Plaintiff recalls an "degrading assignment" where he was placed in the hallway, because there were no seats available in the classroom with his student.  (ECF 45-14, Pl's Opp at 1.) As a result of checking in on the student through a window, Plaintiff states that he was accused of being a "peeping tom," but offers no further details as to the parties involved or what about the event constituted duress.  (Id.)  Notably, each of the above-referenced documents describes events that occurred well-before Plaintiff signed the Settlement Agreement.  Plaintiff's papers do not identify how these events constitute any form of duress in connection with Plaintiff's execution of the agreement.

---

[3]  Defendants have moved to strike this belated submission from Plaintiff.  (ECF No. 47.) Plaintiff filed this letter more than a month after defendants filed their reply brief.  (ECF No. 46.) Moreover, all of these points above could have been included in Plaintiff's opposition papers.  (See, generally, Pl's Opp.) As such, the Court grants Defendants' motion to strike this sur-reply.  In any event, even assuming, for the sake argument, that the Court should consider this submission, Plaintiff's duress claim still fails for the reasons stated above.

The allegations in Plaintiff's January 3, 2022 letter also do not plausibly plead duress. Other than Dr. Woodberry's statement about Jennifer Palumbo, Plaintiff does not even identify the content of any of the statements made by Dr. Woodberry at this meeting. Plaintiff's allegation that Dr. Woodbury used a "threatening" "tone" and "volume" when making certain unidentified statements is insufficient to plausibly allege duress. Moreover, Plaintiff does not even identify when the meeting referenced in the January 3 letter occurred in relation to his execution of the settlement agreement.

Plaintiff's perceptions of the District and its employees appear to be no more than subjective impressions, which by themselves, "cannot properly be regarded as threats that preclude the exercise of free will." Reid v. IBM Corp., No. 95 CIV. 1755, 1997 WL 357969, at *7 (S.D.N.Y. June 26, 1997) (finding no economic duress where plaintiff could have pursued alternatives such as pursuing legal claims). Such "self-imposed, undisclosed, and subjective fears do not constitute an act of duress by the defendant cognizable in law." Rivera v. Sovereign Bank, 976 F. Supp. 2d 270, 284 (E.D.N.Y. 2013)

Plaintiff's claim of duress is also further undermined by the fact that he was represented by an attorney in connection with this settlement agreement. The Settlement Agreement itself makes clear that Plaintiff was represented by an attorney. Additionally, attached to Plaintiff's opposition papers is a message from Plaintiff's counsel in which counsel advised Plaintiff that entering into the Settlement Agreement was "the right decision" but that if Plaintiff did not want to sign he could "take [his] fight to the [Section 75] hearing." (ECF No. 45-13 at 2.) Plaintiff, of course, ended up signing the agreement. This document shows that Plaintiff was acting on his counsel's recommendation when he entered into the Settlement Agreement, and not under duress or coercion from the District.

As Plaintiff had a full opportunity to explore his legal remedies, he cannot plausibly claim duress.  "One cannot successfully claim duress as a defense to a contract when he had an alternative to signing the agreement."  Reid, 1997 WL 357969, at *7 (S.D.N.Y. June 26, 1997) (finding no duress where  plaintiff could have pursued alternatives such as pursuing legal claims).  Here, Plaintiff's own submission shows that he advised about the remedies he could have pursued.

Furthermore, the Settlement Agreement itself explicitly stated that Plaintiff was advised that he had seven days to revoke the agreement following his execution of the agreement.  The presence of this provision in the Settlement Agreement and Plaintiff's failure to invoke it undermines Plaintiff's claim of duress.  Even if Plaintiff could somehow show that he was under duress when he signed the Agreement, the Agreement itself explicitly gave him the opportunity to revoke the settlement.

Second, Plaintiff provides no reasons for his tardiness in waiting until now to try to repudiate the agreement.  More than a year and a half has passed since the execution of the Settlement Agreement.  Under such circumstances, "a delay in repudiation equates to a forfeiture of [Plaintiff's] right to claim duress."  Grullon v. Delta Air Lines, Inc., No. 117-CV-3617, 2020 WL 4261121, at *2 (E.D.N.Y. July 24, 2020), aff'd, No. 20-3207-CV, 2021 WL 6116784 (2d Cir. Dec. 27, 2021); see also VKK Corp., 244 F.3d at 122 ("delays as short as six months have" constituted forfeiture of duress claims); Oquendo v. CCC Terek, 111 F.Supp.3d 389, 410 (S.D.N.Y. 2015) (eight-month delay constituted forfeiture of duress claim).  Accordingly, Plaintiff's claim of duress fails.

**C.  Timeliness of Plaintiff's Claims**

Even assuming arguendo this suit was not barred by the Settlement Agreement, the Court also dismisses the Complaint on grounds that Plaintiff's claims are time-barred.  While Plaintiff

does not address this argument in his opposition, it is readily apparent that Plaintiff filed his discrimination and retaliation claims well-beyond the afforded time period.

In order to be timely, claims brought pursuant to the Title VII, ADEA, and or the ADA must be filed within 90 days after receipt of the right-to-sue letter from the EEOC.  See Tiberio v. Allergy Asthma Immunology of Rochester, 664 F.3d 35, 37-38 (2d Cir. 2011).  This 90-day requirement is "strictly enforced and not extended by even one day." Barney v. H.E.L.P. Homeless Serv. Corp., No. 19 Civ. 5959, 2020 WL 1699984, at *3 (S.D.N.Y. Apr. 8, 2020); see also Foster v. Walgreen Co., 12 F. Supp. 3d 615, 617 (W.D.N.Y. 2014) (same).

As the Court previously discussed, the EEOC issued Plaintiff a "right-to-sue" letter on June 25, 2019.  (ECF No. 1 at 14.) The letter instructed Plaintiff that "in order to pursue this matter further, you must file a lawsuit against the [parties] name in the charge within 90 days of the date you receive this Notice.  (Id.) (emphasis in the original).  Plaintiff failed to file suit within this time period and instead filed another NYSDHR complaint based on the same factual allegations the State Division had previously dismissed.  (See, generally, ECF 45-4.) In dismissing Plaintiff's Second NYSDHR Complaint, the State Division noted that his "allegations of racial discrimination, harassment, and intimidations were already addressed and determined to have no probable cause." (ECF 45-9 at 2.) The EEOC followed suit and issued a Right to Sue Letter to the Plaintiff on September 17, 2020.  Plaintiff, however, did not file the complaint in this action until November 19, 2020, well more than ninety days later.  (See ECF No. 1.)

The Court agrees with Defendants that Plaintiff cannot rely on the later EEOC letter to revive his claims.  A plaintiff may not bring claims 'involving exactly the same facts' that comprised an earlier right-to-sue letter on which a plaintiff did not act.  Bowen-Hooks v. City of New York, 13 F. Supp. 3d 179, 202 (E.D.N.Y. 2014) (collecting cases from the First, Sixth,

Seventh, and Tenth Circuits and holding that "a plaintiff may not rely on the continuing violation theory to revive time-barred claims" under the 90-day rule").[4]

Moreover, because Plaintiff's opposition in no way addresses this timeliness issue the Court may also presume Plaintiff has abandoned this claim. "Courts in this Circuit routinely presumed that a plaintiff has abandoned his claim when he fails to oppose a motion to dismiss said claim." See Thurmand v. Univ. of Connecticut, No. 3:18-CV-1140, 2019 WL 369279, at *3 (D. Conn. Jan. 30, 2019)(collecting cases); see also Heyliger v. West, No. 9:18-CV-0336, 2019 WL 4757334, at *4 (N.D.N.Y. Sept. 30, 2019) (dismissing the pro se plaintiff's claim as abandoned where the plaintiff failed to respond to that aspect of the defendants' motion to dismiss); Cuthbert v. Town of E. Hampton New York, No. 18-CV-4796, 2021 WL 66289, at *5 (E.D.N.Y. Jan. 6, 2021) (same and noting "[p]laintiff's pro se status does not shield him from such a result.").

Because the Court finds Plaintiff's claims are barred by the Settlement Agreement and otherwise time-barred, it is unnecessary to address Defendants' argument that all of Plaintiff's claims also fail on the merits.[5]

## III. CONCLUSION

---

[4] The Court also finds this case does not present the sort of "rare and exceptional circumstances in which a party is prevented in some extraordinary way from exercising his rights" and thus warrant equitable tolling. Zerilli–Edelglass v. New York City Transit Auth., 333 F.3d 74, 80 (2d Cir. 2003). Indeed, "[i]n the absence of a recognized equitable consideration the court cannot extend the limitations period by even one day." Foster v. Walgreen Co., 12 F. Supp. 3d 615, 618 (W.D.N.Y. 2014)(citing Johnson v. Al Tech Specialties Steel Corp., 731 F.2d 143, 146 (2d Cir.1984); see also Manley v. New York City Police Dept., No. CV–05–679, 2005 WL 2664220, at *3–5, 2005 (E.D.N.Y. Oct. 18, 2005) (dismissing plaintiff's claims as untimely for filing 91 days after receipt of the right-to-sue letter, despite plaintiff's arguments that he "lost track of time" and thought the days were calculated by business days, not calendar days). Plaintiff's papers do not identify any basis for applying equitable tolling here.

[5] While it is unnecessary to address all of Defendant's alternative arguments for dismissal, the Court notes that Plaintiff's age discrimination claims are clearly deficient and fail to state plausible claims of age discrimination. Although Plaintiff checked one box on the pro se form complaint indicating that he was alleging age discrimination, Plaintiff did not provide his age (as requested) on the form complaint and none of the factual allegations in the complaint or his other submissions plausibly allege age discrimination.

Based on the foregoing, Defendant's motion to dismiss is GRANTED in its entirety.  The

Clerk of the Court is directed to close this case.

**SO ORDERED.**

Dated: September 13, 2022
Central Islip, New York

_____/s/ (JMA)_____
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE